UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

LANE CARTER                                    CIVIL ACTION NO. 18-0068

                                               SECTION P

VS.

                                               JUDGE TERRY A. DOUGHTY

JACQUE DERR, ET AL.                            MAG. JUDGE KAREN L. HAYES

**MEMORANDUM ORDER**

Plaintiff Lane Carter, a detainee at Jackson Parish Correctional Center proceeding pro se

and in forma pauperis, filed the instant Complaint on January 18, 2018, under 42 U.S.C. § 1983.

Plaintiff names the following Defendants: Judge Jacque Derr, Sheriff Cranford Jordan, "Police

Jury of Winn Parish," Allen Michael McCartney, LaSalle Corrections, Sheriff Andy Brown, and

Warden Timothy Ducote.[1]

**Background**

Plaintiff alleges that, on August 20, 2017, he slipped and fell in the shower at Winn

Parish Jail.  He claims that his fall was "a result of negligence with building maintenance, a

shower floor in particular."  He also claims that he fell because the shower lacked hand railings.

In Plaintiff's initial Complaint, he claims that a guard notified Sheriff Jordan but the Sheriff

waited too long to call emergency medical services: he fell at 5:00 p.m. and emergency medical

technicians arrived at 7:00 p.m.  In Plaintiff's Amended Complaint, he claims that he was

wrapped in a wet shower curtain and instructed to remain still on the concrete floor until Sheriff

Jordan decided whether Plaintiff required medical attention.

---

[1] This matter has been referred to the undersigned for review, report, and
recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of
the Court.

After visiting the emergency room, Plaintiff was released around 10:00 p.m. under physician orders to return for a second examination in two to three days.  Plaintiff claims, however, that despite submitting several "sick calls" he did not receive further care at Winn Parish Jail because Sheriff Jordan would not authorize it.

Plaintiff was subsequently transferred to Jackson Parish Correctional Center.  There, on September 13, 2017, he "saw a facility nurse and was sent to the local emergency room."  He received several tests, which revealed damage to his back.  The emergency room physician instructed Plaintiff to consult a neurosurgeon immediately.  Plaintiff submitted "sick calls" seeking his neurosurgeon consultation, but the facility nurse informed him that the Sheriff would not authorize further medical attention.  Aside from receiving ibuprofen, Plaintiff received no "medical attention until October 12, 2017, when [he] was brought to see the facility doctor."

On October 12, 2017, Plaintiff requested care from a facility doctor, but, after asking if Plaintiff was a pretrial detainee, the doctor refused to treat Plaintiff.

Plaintiff attended a bond reduction hearing before Judge Derr on October 18, 2017.  He faults Judge Derr for denying "medical O/R bond."  Judge Derr denied bond because, according to Plaintiff, Sheriff Jordan misinformed him that Plaintiff was receiving treatment.

Plaintiff alleges that his injuries worsened in October and he "became unable to walk without some form of aid."  Officials gave him a walking aid and then a wheelchair.  Despite being infirm, no one would help Plaintiff shower; instead, he "was given the walker and a folding chair . . . ."  As a result, he slipped and fell again in the shower on October 27, 2017. The attending guard informed Plaintiff that he could "not have medical treatment until October 30, 2017."

A nurse treated Plaintiff on October 30, 2017.  Later that evening, he was sent to "LSU

2

Shreveport Medical Center ER." An emergency room physician prescribed physical therapy and referred Plaintiff to two outpatient clinics. On discharge, physicians instructed Plaintiff to remain in his wheelchair. When Plaintiff returned to confinement, a nurse told him that "there was no order for any form of therapy . . . ."

Plaintiff was intermittently deprived of his wheelchair—from several hours to several days—in November of 2017, which forced him to crawl to the toilet and prevented him from showering and using the telephone. He was once deprived of a shower for nine days because "the guard didn't want to bother finding a wheelchair and folding chair . . . ." A nurse "ordered" Plaintiff to be "taken to the handicap shower in the building, but no one ever took [him] there." He "had several minor falls" when he attempted to walk to the toilet. He was "not offered any treatment" and was instead told to call his fellow inmates for assistance.

Plaintiff also claims that his cell at Jackson Parish Correctional Center was not handicap accessible. He had to crawl up a ladder to his bunk bed "until one of the nurses ordered [him] into a lower" bunk. He was later transferred to a suicide cell that lacked hand railings. Thereafter, he was transferred to another cell that lacked hand railings and that had a toilet "10 feet from the bunks." He was transferred yet again to "general population," which lacked facilities for Plaintiff to access the ice chest, microwave, and telephone.

Plaintiff claims that "guards" took his wheelchair again on December 3, 2017, and did not return it until the following day, forcing Plaintiff to crawl to the toilet. The guards took his wheelchair once more on December 5, 2017.

Plaintiff alleges that the facility did not have a proper handicap transportation vehicle. Officials had to throw him in and out of the vehicle. He endured this treatment "multiple times . . . ." He also had to "trust fall" out of the vehicle into the guards' arms, but the guards

occasionally missed and dropped him.

Plaintiff was "taken to a neurosurgery clinic appointment" on December 28, 2017, and was admitted to the hospital. He was discharged on December 30, 2017, and returned to the detention facility. Plaintiff states, without explanation, that "medication orders have not been followed by [the] facility . . . ."

Throughout his Complaint, Plaintiff maintains that various medical professionals have refused to treat him—or have delayed treatment—because he is a pretrial detainee and the Sheriff(s) will not authorize off-site care. Plaintiff alleges that care for detainees is subject to the Sheriff's discretion. The Sheriff continues to refuse to authorize "any ordered treatment for any injuries [Plaintiff] sustained" while in his custody, "especially for injuries originating in August that have worsened drastically." While Plaintiff admits that he visited the emergency room "several times" and visited a clinic, he claims that he is not receiving any treatment that doctors have prescribed.

Plaintiff claims that he injured his back, head, and shoulder. He is unable to walk or stand due to numbness in his left leg, he suffers pain and numbness throughout his body, he is unable to control his bladder, he is unable to maintain an erection, he has gained an excessive amount of weight, and he experiences various forms of mental distress.

Plaintiff amended his Complaint on May 16, 2018, and named additional Defendants: Police Jury of Winn Parish, Allen Michael McCartney, LaSalle Corrections, Andy Brown, and Timothy Ducote.

Plaintiff amended again on June 5, 2018. He alleges that he was taken to a clinic visit at University Health in May of 2018. The physician asked him if physical therapy was effective, and Plaintiff replied that he was not receiving any therapy.

4

Plaintiff seeks medical treatment for physical and mental injuries, as well as an unstated amount of compensatory damages.  He also asks the Court to recuse Judge Derr from his ongoing state proceeding and to order the state court to transfer venue.

## ORDER

To resolve Plaintiff's claims,[2]

**THE CLERK IS DIRECTED** to serve a copy of this memorandum order, two (2) blank summons forms for **EACH** Defendant:

**(1) Cranford Jordan**

**(2) Police Jury of Winn Parish**

**(3) LaSalle Corrections**

**(4) Andy Brown**

and one (1)  USM-285 form for **EACH** Defendant, upon Plaintiff at his last known address who must then furnish to the

**Clerk of Court**
**201 Jackson Street**
**Monroe, Louisiana 71210-1148**

within **thirty (30) days** after service of this Order, one (1) copy of the original Complaint filed on January 18, 2018, [doc. # 1], one (1) copy of the Amended Complaints filed on May 16, 2018, June 5, 2018, and June 6, 2018, [doc. #s 15, 17, 18], two (2) completed summonses, and one (1) completed USM-285 form for **EACH**  Defendant for service, and that after the foregoing documents have been furnished:

---

[2] In a separate Report and Recommendation, the undersigned recommended that the Court dismiss Plaintiff's request for this court to intervene in his state court prosecution, as well as his claims against Defendants Jacque Derr, Timothy Ducote, and Allen Michael McCartney.

**THE CLERK IS FURTHER DIRECTED** to serve, through the U.S. Marshal, a copy of the Complaint and Amended Complaints, the appropriate summons, and a copy of this Memorandum Order on **EACH** Defendant.

**IT IS ORDERED** that Defendants file a response within twenty-one (21) days after the date of service. Defendants shall address whether Plaintiff should be required to exhaust administrative remedies, and, if so, whether he has exhausted his administrative remedies prior to filing herein. If Defendants contend that Plaintiff failed to exhaust administrative remedies, they are authorized to raise this issue via summary judgment motion as a threshold matter. See *Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010). Alternatively, if disputed facts preclude Defendants from filing a summary judgment, Defendants may file a motion for an evidentiary hearing to resolve the exhaustion issue before the case proceeds to the merits.

**IT IS FURTHER ORDERED** that the following deadlines be established:

1. Within twenty-one (21) days of Defendants' first appearance (filing of an answer or motion), or within thirty (30) days after service of the summons and complaint if Defendant(s) have made no appearance, Defendants or their counsel shall provide to Plaintiff all medical records, warden's unusual occurrence reports, and all other documents pertinent to the issues in this case, that are in their possession. See FED. R. CIV. P. 26(a)(1). Defendants or their counsel shall contemporaneously file a copy of these documents under seal with the Court, together with a Notice of Compliance attesting to the fact that the requirements of this Order have been met. If Plaintiff is not in receipt of these documents within the prescribed time period, Plaintiff may file with the Court a motion to compel such responses from Defendant(s). Any such motion must contain a memorandum in support and a proposed order, separately captioned and with a certificate of service stating that a copy has been sent to Defendant(s) via United States mail, to

Defendants' counsel.

2.  Within ninety (90) days of Defendants' first appearance (filing of an answer or motion), the parties shall complete all discovery.  The discovery deadline shall be suspended during the pendency of a motion for summary judgment or evidentiary hearing on the issue of exhaustion.

3.  In addition to the mandatory discovery addressed in subsection (1) above, the parties may serve on one another additional written discovery requests; however, such additional discovery shall be limited to ten (10) interrogatories, five (5) requests for production of documents, and ten (10) requests for admissions.  See FED. R. CIV. P. 33, 34, & 36.

Pursuant to Rule 5(d) of the Federal Rules of Civil Procedure, the Court orders that all discovery requests and responses shall be filed into the record (by sending a copy of same to the Clerk of Court) in addition to being sent simultaneously to the opposing party by placing a copy of same in the United States mail addressed to that party or, where represented, to that party's counsel.

Note: *Do not file "motions for discovery," as a motion is not the correct way to obtain discovery.  Pursuant to the Federal Rules of Civil Procedure, written discovery (in the form of interrogatories, requests for production of documents, and requests for admissions) should be sent directly to counsel for the opposing party for a response.*

In the event that any party believes that it needs additional discovery beyond that allowed by this Order, that party shall file a motion with the Court requesting such additional discovery. The motion must contain a memorandum in support, a copy of the additional discovery requested, and a proposed order, all separately captioned and with a certificate of service stating that a copy of same has been sent to the opposing side (either to Plaintiff or to

Defendants/Defendants' counsel) via United States mail, to Plaintiff or to Defendants/Defendants' counsel, depending on who filed the motion.

Any motions to compel must comply with the requirements set out above for motions and must be filed prior to the end of the discovery period.

4.  Within one hundred and twenty (120) days of Defendants' first appearance, each party shall file one of the following:

a)    Motion for Summary Judgment as provided by Rule 56 of the Federal Rules of Civil Procedure, to include material and relevant affidavits, certified records, interrogatories and answers, admissions and depositions, if any, and a supporting memorandum brief; or alternatively,

b)    Statement of Issues which shall enumerate each genuine issue of material fact perceived by that party which is relevant to this matter, or state that there are none.  This statement will be used by the Court to determine the necessity for an evidentiary hearing.

Any party's failure to comply with this Order may result in the imposition of sanctions against that party.

In Chambers, Monroe, Louisiana, this 13th day of June, 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE