UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **LANE CARTER** | **CIVIL ACTION NO. 18-0068** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **JACQUE DERR, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Lane Carter, a detainee at Jackson Parish Correctional Center proceeding pro se and in forma pauperis, filed the instant Complaint on January 18, 2018, under 42 U.S.C. § 1983. Plaintiff names the following Defendants: Judge Jacque Derr, Sheriff Cranford Jordan, "Police Jury of Winn Parish," Allen Michael McCartney, LaSalle Corrections, Sheriff Andy Brown, and Warden Timothy Ducote.[1] For the following reasons, it is recommended that Plaintiff's request for this court to intervene in his state court prosecution, as well as his claims against Defendants Jacque Derr, Timothy Ducote, and Allen Michael McCartney, be **DISMISSED WITH PREJUDICE**.[2]

## Background

Plaintiff alleges that, on August 20, 2017, he slipped and fell in the shower at Winn Parish Jail. He claims that his fall was "a result of negligence with building maintenance, a shower floor in particular." He also claims that he fell because the shower lacked hand railings.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

[2] Plaintiff sets forth additional claims in his Complaint that are not subject to the instant Report and Recommendation. The undersigned directed the Clerk of Court, in a separate Memorandum Order, to serve Plaintiff with summons forms for the additional claims.

In Plaintiff's initial Complaint, he claims that a guard notified Sheriff Jordan but the Sheriff waited too long to call emergency medical services: he fell at 5:00 p.m. and emergency medical technicians arrived at 7:00 p.m. In Plaintiff's Amended Complaint, he claims that he was wrapped in a wet shower curtain and instructed to remain still on the concrete floor until Sheriff Jordan decided whether Plaintiff required medical attention.

After visiting the emergency room, Plaintiff was released around 10:00 p.m. under physician orders to return for a second examination in two to three days. Plaintiff claims, however, that despite submitting several "sick calls" he did not receive further care at Winn Parish Jail because Sheriff Jordan would not authorize it.

Plaintiff was subsequently transferred to Jackson Parish Correctional Center. There, on September 13, 2017, he "saw a facility nurse and was sent to the local emergency room." He received several tests, which revealed damage to his back. The emergency room physician instructed Plaintiff to consult a neurosurgeon immediately. Plaintiff submitted "sick calls" seeking his neurosurgeon consultation, but the facility nurse informed him that the Sheriff would not authorize further medical attention. Aside from receiving ibuprofen, Plaintiff received no "medical attention until October 12, 2017, when [he] was brought to see the facility doctor."

On October 12, 2017, Plaintiff requested care from a facility doctor, but, after asking if Plaintiff was a pretrial detainee, the doctor refused to treat Plaintiff.

Plaintiff attended a bond reduction hearing before Judge Derr on October 18, 2017. He faults Judge Derr for denying "medical O/R bond." Judge Derr denied bond because, according to Plaintiff, Sheriff Jordan misinformed him that Plaintiff was receiving treatment.

Plaintiff alleges that his injuries worsened in October and he "became unable to walk

without some form of aid." Officials gave him a walking aid and then a wheelchair. Despite being infirm, no one would help Plaintiff shower; instead, he "was given the walker and a folding chair . . . ." As a result, he slipped and fell again in the shower on October 27, 2017. The attending guard informed Plaintiff that he could "not have medical treatment until October 30, 2017."

A nurse treated Plaintiff on October 30, 2017. Later that evening, he was sent to "LSU Shreveport Medical Center ER." An emergency room physician prescribed physical therapy and referred Plaintiff to two outpatient clinics. On discharge, physicians instructed Plaintiff to remain in his wheelchair. When Plaintiff returned to confinement, a nurse told him that "there was no order for any form of therapy . . . ."

Plaintiff was intermittently deprived of his wheelchair—from several hours to several days—in November of 2017, which forced him to crawl to the toilet and prevented him from showering and using the telephone. He was once deprived of a shower for nine days because "the guard didn't want to bother finding a wheelchair and folding chair . . . ." A nurse "ordered" Plaintiff to be "taken to the handicap shower in the building, but no one ever took [him] there." He "had several minor falls" when he attempted to walk to the toilet. He was "not offered any treatment" and was instead told to call his fellow inmates for assistance.

Plaintiff also claims that his cell at Jackson Parish Correctional Center was not handicap accessible. He had to crawl up a ladder to his bunk bed "until one of the nurses ordered [him] into a lower" bunk. He was later transferred to a suicide cell that lacked hand railings. Thereafter, he was transferred to another cell that lacked hand railings and that had a toilet "10 feet from the bunks." He was transferred yet again to "general population," which lacked

facilities for Plaintiff to access the ice chest, microwave, and telephone.

Plaintiff claims that "guards" took his wheelchair again on December 3, 2017, and did not return it until the following day, forcing Plaintiff to crawl to the toilet. The guards took his wheelchair once more on December 5, 2017.

Plaintiff alleges that the facility did not have a proper handicap transportation vehicle. Officials had to throw him in and out of the vehicle. He endured this treatment "multiple times." He also had to "trust fall" out of the vehicle into the guards' arms, but the guards occasionally missed and dropped him.

Plaintiff was "taken to a neurosurgery clinic appointment" on December 28, 2017, and was admitted to the hospital. He was discharged on December 30, 2017, and returned to the detention facility. Plaintiff states, without explanation, that "medication orders have not been followed by [the] facility . . . ."

Throughout his Complaint, Plaintiff maintains that various medical professionals have refused to treat him—or have delayed treatment—because he is a pretrial detainee and the Sheriff(s) will not authorize off-site care. Plaintiff alleges that care for detainees is subject to the Sheriff's discretion. The Sheriff continues to refuse to authorize "any ordered treatment for any injuries [Plaintiff] sustained" while in his custody, "especially for injuries originating in August that have worsened drastically." While Plaintiff admits that he visited the emergency room "several times" and visited a clinic, he claims that he is not receiving any treatment that doctors have prescribed.

Plaintiff claims that he injured his back, head, and shoulder. He is unable to walk or stand due to numbness in his left leg, he suffers pain and numbness throughout his body, he is

unable to control his bladder, he is unable to maintain an erection, he has gained an excessive amount of weight, and he experiences various forms of mental distress.

Plaintiff amended his Complaint on May 16, 2018, and named additional Defendants: Police Jury of Winn Parish, Allen Michael McCartney, LaSalle Corrections, Andy Brown, and Timothy Ducote.

Plaintiff amended again on June 5, 2018. He alleges that he was taken to a clinic visit at University Health in May of 2018. The physician asked him if physical therapy was effective, and Plaintiff replied that he was not receiving any therapy.

Plaintiff seeks medical treatment for physical and mental injuries, as well as an unstated amount of compensatory damages. He also asks the Court to recuse Judge Derr from his ongoing state proceeding and to order the state court to transfer venue.

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a detainee who has been permitted to proceed in forma pauperis. As a detainee seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Likewise, a complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Ashcroft*, 556 U.S. at 662; *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights

complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

**2. Abstention**

Plaintiff asks the Court to recuse[4] Judge Derr from his pending state court proceeding and to order the state court to transfer venue. Plaintiff is charged with theft and distribution of a controlled dangerous substance. [doc. # 15, p. 5].

"Under the *Younger* abstention doctrine, federal courts should generally decline to exercise jurisdiction when: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (internal quotation marks and quoted sources omitted). "Where those three criteria are satisfied, a federal court may enjoin a pending state-court criminal proceeding only if: (1) the state-court proceeding was brought in bad faith or to harass the federal plaintiff; (2) the federal plaintiff seeks to challenge a state statute that is 'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it,' or (3) where other 'extraordinary circumstances' threaten 'irreparable loss [that] is both great and immediate.'" *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 53-54 (1971)).

Here, Plaintiff asks the Court to interfere in an ongoing state judicial proceeding. The state court proceeding concerns the enforcement of state criminal laws, a subject matter in which the state has an important interest. See *Gates*, 885 F.3d at 880. In addition, Plaintiff has an

---

[4] [doc. # 13].

adequate opportunity to raise his challenges to the state criminal proceedings in state court. To the extent Plaintiff argues that he has been unsuccessful or is likely to be unsuccessful in raising his claims in state court, that is irrelevant: "The relevant question is whether the would-be federal plaintiff has the opportunity to raise his federal claims in state court." *Id.* (cited sources omitted).[5] Moreover, Plaintiff does not allege that the state proceeding was brought against him in bad faith, he does not challenge a state statute, and he alleges no extraordinary circumstances that threaten irreparable, immediate, and great loss. Accordingly, *Younger* abstention applies, and the Court should dismiss Plaintiff's request for this court to intervene in the state court proceeding.

**3. Judicial Immunity**

Plaintiff faults Judge Derr, a state court judge, for denying "medical O/R bond." "Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). "Absolute judicial immunity extends to all judicial acts which are not performed in the clear absence of all jurisdiction." *Kemp ex rel. Kemp v. Perkins*, 324 Fed. App'x. 409, 411 (5th Cir. 2009) (citing *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)). There are only two exceptions: (1) non-judicial actions, i.e., actions not taken in the judge's judicial capacity; and (2) lawsuits challenging actions taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

"In determining whether an action is judicial, a court looks to the nature of the act itself; that is, whether the challenged act is a function normally performed by a judge." *Id.* The Fifth Circuit adopted a four-factor test to determine whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3)

---

[5] Plaintiff asserts that he will soon "figure out how to file a motion for recusal . . . ."

whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard*, 413 F.3d at 515. "These factors are broadly construed in favor of immunity." *Id.*

Here, Judge Derr's alleged act of setting bond was, manifestly, a judicial function. See *Barnes v. Madison*, 79 F. App'x 691, 701 (5th Cir. 2003) (finding that absolute immunity cloaked a judge who set the plaintiff's bond); *Herring v. Mayfield*, 51 F.3d 1043, 1995 WL 153026, at *1 (5th Cir. 1995) ("[S]etting the amount of the bond . . . is within the scope of [the judge's] jurisdiction, thus affording her absolute judicial immunity."). Plaintiff does not allege that Judge Derr acted outside of the courtroom or chambers, and he does allege that his claim centers around his pending case before Judge Derr. Moreover, the act, according to Plaintiff, arose directly out of a visit to Judge Derr in his official capacity.

Finally, Plaintiff does not allege that Judge Derr acted in absence of all jurisdiction. See LA. CONST. art. V, § 16 ("[A] district court shall have original jurisdiction of all civil and criminal matters."). Accordingly, Plaintiff's claims against Judge Derr should be dismissed because Judge Derr is entitled to absolute judicial immunity.

**4. Supervisory Officials**

Plaintiff names Warden Timothy Ducote and the President of the Winn Parish Police Jury, Allen Michael McCartney, as Defendants. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir. 1994).

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Here, Plaintiff does not allege that either Defendant was personally involved or implemented an unconstitutional policy. Accordingly, Plaintiff's claims against Warden Ducote and Police Jury President McCartney should be dismissed as frivolous and for failing to state a claim on which relief can be granted.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Lane Carter's request for this court to intervene in his state court proceeding, [doc. # 13], be **DISMISED WITH PREJUDICE** under the *Younger* abstention doctrine.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Judge Jacque Derr be **DISMISSED WITH PREJUDICE** as Judge Derr is entitled to absolute judicial immunity.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims against Warden Timothy Ducote and Police Jury President Allen M. McCartney be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief can be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R.**

**Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 13th day of June, 2018.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE