Page 1

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

* * * * * * * * * *

LANE CARTER             CIVIL ACTION NO. 3:18-CV-00068
    LA. DOC #15199

VS.                                        SECTION P

                                        JUDGE TERRY A DOUGHTY

JACQUE DERR, ET AL     MAGISTRATE JUDGE KAREN L. HAYES

* * * * * * * * * *

DEPOSITION OF

LANE CARTER

September 20, 2018

* * * * * * * * * *

    The deposition of LANE CARTER, was taken in the above entitled cause, pursuant to the following stipulations, before Rheba Eppinette Gwin, Certified Court Reporter, State of Louisiana Certificate No. 2010027, at the Jackson Parish Correctional Center, 327 Industrial Drive, Jonesboro, Louisiana 71251-5498, on Thursday, the 20th day of September 2018, beginning at 10:01 a.m., and concluding at 11:50 a.m.

```
 1                  A-P-P-E-A-R-A-N-C-E-S
 2   FOR PLAINTIFF:
 3        LANE CARTER (15199), PRO SE
          Jackson Parish Correctional Center
 4        327 Industrial Drive
          Jonesboro, Louisiana 71251-5498
 5
     FOR DEFENDANT LASALLE CORRECTIONS, LLC AND SHERIFF
 6   ANDY BROWN, SHERIFF OF JACKSON PARISH:
 7        PROVOSTY, SADLER & DeLAUNAY, APC
          934 Third Street, 8th Floor
 8        Alexandria, Louisiana   71309-1791
          (318) 445-3631
 9
                  Appearing herein by and through
10              Mr. H. Bradford Calvit
                   bcalvit@provosty.com
11
     FOR DEFENDANT WINN PARISH POLICE JURY:
12
          GOLD, WEEMS, BRUSER, SUES & RUNDELL
13        2001 MacArthur Drive
          Alexandria, Louisiana   71307-6118
14        (318) 445-6471
15                Appearing herein by and through
                   Mr. Steven M. Oxenhandler
16               soxenhandlelr@goldweems.com
17   APPEARING VIA CELL PHONE CONFERENCE CALL:
18   FOR DEFENDANT SHERIFF ANDY BROWN, SHERIFF OF
     JACKSON PARISH:
19
          USRY & WEEKS (NO)
20        1615 Poydras Street, Suite 1250
          New Orleans, Louisiana 70112
21        (504) 592-4600
22                Appearing herein by and through
                   Mr. Ronald Shane Bryant
23               sbryant@usryweeks.com
24
25
```

I-N-D-E-X

EXAMINATION:

    BY MR. OXENANDLER . . . . . . . . . . . . . . . . . . 5

    BY MR. CALVIT . . . . . . . . . . . . . . . . . . . 42

    BY MR. BRYANT . . . . . . . . . . . . . . . . . . 134

RE-EXAMINATION:

    BY MR. OXENHANDLER . . . . . . . . . . . . . . . . 135

    BY MR. BRYANT . . . . . . . . . . . . . . . . . . 139

EXHIBITS:

    Exhibit No. 1 -- Summons . . . . . . . . . . . . 15

    Exhibit No. 2 -- Jackson Parish Ambulance

    Service . . . . . . . . . . . . . . . . . . . . 17

    Exhibit No. 3 -- Photographs . . . . . . . . . 19

    JPCC Exhibit No. 1 -- Medical Refusal Form

        (JPCC M74) . . . . . . . . . . . . . . . . . 105

    JPCC Exhibit No. 2 -- Sick Call Request Form

        (JPCC M75) . . . . . . . . . . . . . . . . . 108

S-T-I-P-U-L-A-T-I-O-N

It is stipulated that the deposition of LANE CARTER, is taken by counsel for the Defendants, pursuant to Notice, on Thursday, the 20th day of September 2018, before Rheba Eppinette Gwin, Certified Court Reporter, Certificate No. 2010027.

The deposition is being taken pursuant to Notice and the Louisiana Code of Civil Procedure.

The parties hereto waive all formalities in connection with the taking of said deposition, except the swearing of the witness, and the reduction of the questions and answers to typewriting.

The witness, LANE CARTER, was advised of his right to read and sign this deposition, and he elected to waive that right.

* * * * * * * * *

| | | |
|---|---|---|
| 1 | A | They gave me no other reason. |
| 2 | Q | Okay. |
| 3 | A | And that's when Mr. Williams told me that if I |
| 4 | | was -- that he -- in his opinion he didn't |
| 5 | | think that, you know, the sheriff was going to |
| 6 | | provide me with any medical treatment. |
| 7 | Q | And how did that strike you? |
| 8 | A | I was appalled.  I was -- I was mad. |
| 9 | Q | Did Sheriff Jordan ever communicate anything |
| 10 | | like that to you? |
| 11 | A | No, sir.  I did not see Sheriff Jordan again. |
| 12 | Q | And so your -- and essentially, the genesis of |
| 13 | | the suit or the basis of the suit was your |
| 14 | | understanding that for whatever reason Sheriff |
| 15 | | Jordan had forbidden you from having medical |
| 16 | | care? |
| 17 | A | Correct. |
| 18 | Q | It may have been because he didn't like you. |
| 19 | | It may have been because money. |
| 20 | A | It could be a multitude of reasons.  I don't |
| 21 | | know any of them. |
| 22 | Q | All right.  You had mentioned that you went to |
| 23 | | Jackson Correctional. |
| 24 | A | Uh-huh. |
| 25 | Q | How was that communicated to you and what -- |

Lane Carter v. Jacque Derr
Lane Carter

Page 112

```
 1          had mentioned that you had saw the nurse on
 2          the 13th.  After you got to JPCC, did you see
 3          a nurse or a health care provider before the
 4          13th?
 5    A     Yes, sir.
 6    Q     And describe what happened during that?
 7    A     They took my vitals, blood pressure, things
 8          like that, asked me, you know, medical
 9          history.  I'd already filled out a sick call
10          by then.  I had mentioned it to them.  The
11          nurse pulled it, looked at it and said that
12          within a few days she would have me back in
13          her office to go over that.
14    Q     And then that's when you came back on the
15          13th?
16    A     No, I -- I can't remember if there was a visit
17          before the 13th or if it was straight to the
18          13th.
19    Q     All right.  During those three or four days --
20    A     Uh-huh.
21    Q     -- did your physical condition stay the same,
22          get better or worsen?
23    A     It -- honestly, I -- it didn't get any better.
24          I can't really say it got worse at that time,
25          but I know it didn't get any better.
```

Lane Carter v. Jacque Derr
Lane Carter

Page 113

1  Q     But you were still walking around?
2  A     Yes, sir. Yes, sir. I could walk all the way
3        up until somewhere in October and then it just
4        -- it hurt really bad and then my leg just
5        went numb.
6  Q     Okay. Now, you had mentioned earlier that you
7        had a second fall --
8  A     Yes, sir.
9  Q     -- and in your mind it was because of the
10       issues that arose after the first fall.
11 A     Yes, sir.
12 Q     Describe for me what issues had arisen after
13       the first fall, but before this second.
14       Medical issues.
15 A     Medical issues? I mean, you want all of them?
16 Q     Yeah.
17 A     Okay. If I can remember correctly because
18       there's been a lot of things wrong with me.
19       It's been over a year. I'm in constant pain.
20       I'm in absolute pain. My left arm is numb.
21       My left knee --
22 Q     No, no, not now. I'm talking about --
23 A     I'm telling you things from way back. I mean,
24       these are still --
25 Q     No, no. No, here --

Page 131

```
 1            whichever building I happen to be in.
 2    Q       You're talking about the nurse at JPCC?
 3    A       Oh, yes.  I'm sorry.  Yes, sir.  The JPCC
 4            nurses.
 5    Q       Okay.
 6    A       Now, I understand the whole security, we can't
 7            tell you where you're going or when.  I get
 8            that.  I mean, I understand that completely.
 9    Q       Okay.
10    A       But as far as telling me oh, well we might
11            know what's wrong with you, but we can't tell
12            you because it's a threat to security.  No,
13            that -- I don't understand that.
14    Q       All right.  I think that another key condition
15            or aspect of your claim is that you believe
16            that had you received different or better
17            medical care you wouldn't be in the condition
18            you're in.
19    A       Yes.
20    Q       What is that based on?
21    A       My opinion.
22    Q       Okay.  You had mentioned you don't have any
23            medical --
24    A       Exact --
25    Q       -- training.
```

Lane Carter v. Jacque Derr
Lane Carter

Page 134

```
 1          WITNESS:
 2             I have no objection to fill --
 3          MR. CALVIT:
 4             And we have an obligation to provide
 5          you copies of everything we received.
 6          WITNESS:
 7             I understand that, yes, sir, but I
 8          mean, I know what I'd be signing so I
 9          have no problem with it.
10          MR. CALVIT:
11             All right.  Shane, do you have any
12          questions?
13          MR. BRYANT:
14             I think I only have one question and
15          it -- you may have already answered this,
16          sir, but I just want to -- you know, it's
17          kind of spread out and I want to make
18          sure I'm clear about it.
19                       EXAMINATION
20   BY MR. BRYANT:
21   Q    From the day that you fell in Winn Parish to
22        today, have you ever seen or spoken to Sheriff
23        Jordan since that day?
24   A    Yes, I have.
25   Q    When was that?
```

Lane Carter v. Jacque Derr
Lane Carter

Page 135

```
 1  A    On different court visits.
 2  Q    So, you saw him on court visits?  On --
 3  A    Yeah.
 4  Q    On those days that you saw him on those court
 5       visits, did you ever talk about your medical
 6       condition?
 7  A    I tried to.
 8  Q    And what -- what was said?
 9  A    Nothing.  I would ask him if I could talk to
10       him about my condition and he didn't respond
11       to me.
12  Q    Okay.  So, you never -- never got a chance to
13       talk to him about it.
14  A    No, sir.
15  Q    Is that correct then?
16  A    That's correct.
17  Q    Okay.  And so when you say that Sheriff Jordan
18       prevented you from getting medical treatment,
19       you're basing that solely on things that other
20       people told you.  Right?  Like Sheriff Jordan
21       never told you you couldn't have medical
22       treatment?
23  A    That's correct.
24  Q    Okay.
25            MR. BRYANT:
```

Case 3:18-cv-00068-TAD-KLH Document 59-4 Filed 12/04/18 Page 11 of 13 PageID #: 1312
Lane Carter v. Jacque Derr
Lane Carter

Page 136

1                I think those are the only questions
2       I have, guys.
3            MR. CALVIT:
4                Sorry I let you down, Shane.
5            MR. OXENHANDLER:
6                I just have one follow-up question.
7                       EXAMINATION
8    BY MR. OXENHANDLER:
9    Q    The gap in the hole in the plastic floor that
10        was inserted into the shower, that was clear
11        and obvious to you whenever you took a shower?
12        You saw that hole?
13   A    Yes.  Eventually.  I didn't -- like I said, I
14        don't know when it got there because I didn't
15        notice it the first few times I took a shower
16        and then I looked down one day and it was
17        there.
18   Q    But every time afterwards you knew that that -
19        -
20   A    Yeah.
21   Q    -- hole was there?
22   A    Well, it -- yeah, it was there.
23   Q    Before --
24   A    I mean, it couldn't go anywhere else.  It was
25        there.

1  COURT REPORTER:
2      Okay. I'll get a copy of your
3  information off the index then. And you
4  need a copy?
5  MR. BRYANT:
6      Okay, great.
7  COURT REPORTER:
8      Okay.
9  MR. CALVIT:
10     Thank you, Shane. I'll speak with
11 you later.
12 MR. BRYANT:
13     Thanks everybody. I appreciate it.
14 MR. CALVIT:
15     All right, sir. Appreciate your
16 time.
17 WITNESS:
18     Thank you, sir. Ma'am.
19
20
21
22
23
24
25     **DEPOSITION CONCLUDED AT 11:50 A.M.**

Case 3:18-cv-00068-TAD-KLH   Document 59-4   Filed 12/04/18   Page 13 of 13 PageID #: 1314
Lane Carter v. Jacque Derr
Lane Carter

Page 145

# REPORTER'S PAGE

I, **RHEBA EPPINETTE GWIN**, Certified Court Reporter in and for the State of Louisiana, the officer, as defined in Rule 28 of the Federal Rules of Civil Procedure and/or Article 1434(B) of the Louisiana Code of Civil Procedure, before whom this proceeding was taken, do hereby state on the Record:

That due to the interaction in the spontaneous discourse of this proceeding, dashes (--) have been used to indicate pauses, changes in thought, and/or talk overs; that same is the proper method for a Court Reporter's transcription of proceeding, and that the dashes (--) do not indicate that words or phrases have been left out of this transcript; that any words and/or names which could not be verified through reference material have been denoted with the phrase "(spelled phonetically)."

_____
**RHEBA EPPINETTE GWIN**
**Certified Court Reporter**