UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| LANE CARTER | * | CIVIL ACTION NO.   18-0068 Section P |
| VERSUS | * | JUDGE TERRY A. DOUGHTY |
| JACQUE DERR, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the District Court, are three motions for summary judgment, enumerated and identified by defendant, as follows:   1) Winn Parish Police Jury [doc. # 49]; 2) Cranford Jordan [doc. # 59]; and 3) Andy Brown and LaSalle Corrections [doc. # 64].   The motions are opposed.   For reasons set forth below, it is recommended that the Winn Parish Police Jury's motion for summary judgment be GRANTED, and that the remaining motions be GRANTED-IN-PART and DENIED-IN-PART.

Background

Plaintiff pro se Lane Carter, who is proceeding in forma pauperis in this matter, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 on January 18, 2018, against defendants, Judge Jacque Derr, Winn Parish Sheriff Cranford Jordan, the Winn Parish Jail, and the Jackson Parish Correctional Center ("JPCC").

Carter, who, during the relevant period, was a pretrial detainee at the Winn Parish Jail and the Jackson Parish Correctional Center ("JPCC"), complains that on August 20, 2017, he fell in the shower at the Winn Parish Jail when his foot caught in a broken milk crate that the facility had placed on the shower floor because of poor drainage.   He further complains that, after his fall, Winn Parish Sheriff Cranford Jordan delayed calling an ambulance for at least two hours.

Meanwhile, Carter was required to remain on the concrete floor wrapped in a wet shower curtain.

Upon his release from the Winn Parish Medical Center later that same evening, Carter was advised to schedule an appointment with his primary physician within the next two to three days.   However, Carter never received any further medical care at the Winn Parish Jail -- purportedly because Sheriff Jordan would not authorize it.

On September 5, 2017, Carter was transferred from the Winn Parish Jail to the JPCC. Despite several sick call requests, he was not seen by a facility nurse for several days whereupon on September 13, 2017, he was transported to the Jackson Parish Hospital.   Carter underwent diagnostic testing at the hospital, including x-rays of the cervical and lumbar spine.   Upon review, the emergency room physician advised Carter to see a neurosurgeon for an immediate consult.

Aside from ibuprofen, Carter did not receive any further medical attention until October 12, 2017, when he was seen by the JPCC's physician.   Once the facility physician learned that Carter was a pretrial detainee, however, she allegedly refused to treat him.

During the month of October 2017, Carter's condition deteriorated.   He was removed from the general population because he could not walk to eat meals, and placed in "medical infirm," which turned out to be cells for inmates on suicide watch.   Whilst in the suicide cell, it became too difficult for Carter to walk, and so he was provided a walker initially, and then a wheelchair.   Because he was in "medical infirm," he lost his prison privileges.

On Friday, October 27, 2017, Carter was permitted to take a five-minute shower by himself with his walker and a plastic chair.   During the shower, however, Carter lost his balance, slipped and fell, and hit his back and shoulder on the ground, knocking himself out momentarily.   The guard overseeing the shower instructed other inmates to carry Carter to his

2

cell, and told him that he could not receive medical treatment until Monday when a nurse was present on site.

On October 30, 2017, Carter filled out a sick call request regarding his fall on the 27th. Later that evening, Carter was transported to the LSU Shreveport Medical Center emergency room where he was seen by an on-duty physician, a neurosurgeon, and a neurologist.   More tests and scans were run.   Upon discharge, an emergency room physician prescribed physical therapy and referred Carter to two outpatient clinics.   Upon his return to the JPCC, a nurse told Carter that "there was no order for any form of therapy . . ."

Guards intermittently deprived Carter of his wheelchair—from several hours to several days—in November of 2017, which forced him to crawl to the toilet and prevented him from showering and using the telephone.   He once was deprived of a shower for nine days because "the guard didn't want to bother finding a wheelchair and folding chair . . ."   Also, a nurse "ordered" Carter to be "taken to the handicap shower in the building, but no one ever took [him] there."   He "had several minor falls" when he attempted to walk to the toilet.   Carter was "not offered any treatment," and instead was told to call his fellow inmates for assistance.

Carter also claims that his cell at the JPCC was not accessible for the mobility-impaired. He had to crawl up a ladder to his bunk bed "until one of the nurses ordered [him] into a lower" bunk.   He later was transferred to a suicide cell that lacked hand railings.   Thereafter, he was transferred to another cell that lacked hand railings and that had a toilet "10 feet from the bunks." He was transferred yet again to "general population," which lacked facilities for him to access the ice chest, microwave, and telephone.

Carter asserted that "guards" took his wheelchair again on December 3, 2017, and did not return it until the following day, thus forcing him to crawl to the toilet.   The guards took his wheelchair yet again on December 5, 2017.

Plaintiff alleged that the facility did not have a wheelchair accessible transportation vehicle.   Therefore, officials had to throw him in and out of the vehicle.   He endured this treatment "multiple times . . ."   He also had to "trust fall" out of the vehicle into the guards' arms, but the guards occasionally missed and dropped him.

Carter was "taken to a neurosurgery clinic appointment" on December 28, 2017, and admitted to hospital until December 30, 2017.   Carter stated, without explanation, that "medication orders have not been followed by [the] facility . . ."

Carter maintains that various medical professionals refused to treat him—or have delayed treatment—because he is a pretrial detainee and the Sheriff(s) will not authorize off-site care. Carter alleged that care for detainees is subject to the Sheriff's discretion.   The Sheriff continues to refuse to authorize "any ordered treatment for any injuries [Plaintiff] sustained" while in his custody, "especially for injuries originating in August that have worsened drastically."   While Carter admits that he visited the emergency room "several times" and visited a clinic, he claims that he is not receiving any treatment that doctors have prescribed.

Carter alleged that he injured his back, head, and shoulder.   He also remains unable to walk or stand because of numbness in his left leg; he suffers pain and numbness throughout his body; he is unable to control his bladder; he is unable to maintain an erection; he has gained an excessive amount of weight; and he has experienced various forms of mental distress.

Carter amended his Complaint on May 16, 2018, and named additional defendants:   the Winn Parish Police Jury, Allen Michael McCartney, LaSalle Corrections, Sheriff Andy Brown, and Warden Timothy Ducote.   Carter again amended his complaint on June 5, 2018.   He alleged that he was taken to a clinic visit at University Health in May 2018.   The physician asked him whether physical therapy was effective.   Carter replied that he had not received any therapy.

4

Carter seeks medical treatment for his physical and mental injuries, as well as an unstated amount of compensatory damages.

On June 13, 2018, the undersigned issued a report recommending dismissal of plaintiff's request/claim for this court to intervene in his state court prosecution, as well as his claims against defendants, Jacque Derr, Timothy Ducote, and Allen Michael McCartney.   (June 13, 2018, Report & Recommendation [doc. # 21]).[1]   The court contemporaneously ordered service on defendants, Cranford Jordan, Winn Parish Police Jury, LaSalle Corrections, and Andy Brown. (June 13, 2018, Mem. Order [doc. # 20]).[2]

Between August 6-8, 2018, remaining defendants, Cranford Jordan, Winn Parish Police Jury, Andy Brown, and LaSalle Corrections, filed answers to the suit.   *See* Answers [doc. #s 26, 28-29].

On November 6, 2018, the Winn Parish Police Jury filed the instant motion for summary judgment seeking dismissal of plaintiff's claims.   [doc. # 49].   On December 4 and 7, 2018, defendants, Cranford Jordan, Andy Brown, and LaSalle Corrections, filed their respective motions for summary judgment.   [doc. #s 59 & 64].   Plaintiff filed responses in opposition to each of the motions.   [doc. #s 54, 67, & 69].   Some movants filed reply briefs.   [doc. #s 57, 68].   The matter is ripe.

## Standard of Review

Summary judgment is appropriate when the evidence before the court shows "that there

---

[1] The District Court adopted the report and recommendation on July 3, 2018.   (Judgment [doc. # 24]).

[2] The next day, the Clerk of Court docketed a response from plaintiff in which he stated that he wished to remove/withdraw the Winn Parish Police Jury and LaSalle Corrections as defendants. [doc. # 22].   However, there is no indication that the Clerk referred plaintiff's request to a judicial officer to be acted upon.

5

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather,

6

the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

### § 1983 Principles

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). Section 1983, however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Id.* "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id.* (citation omitted).

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Leffall v. Dallas Independent School*

7

*District*, 28 F.3d 521, 525 (5th Cir. 1994).   The first inquiry is whether plaintiff has alleged a violation of a constitutional right at all.   *Id.   Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995).

When, at least in part here, plaintiff seeks money damages from government officials in their individual capacities[3] under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)).   The qualified immunity doctrine balances two often conflicting interests — "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Id.*   As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Id.* (citations omitted).   In effect, qualified immunity "gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir.2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense.   However, once raised by defendants, it devolves upon plaintiff to negate the defense by showing that the officials' conduct violated clearly established law.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th

---

[3] Plaintiff arguably asserted individual as well as official capacity claims against the sheriffs.

Cir.2008) (citation omitted).   Plaintiff's burden is two-pronged.   *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted).   First, plaintiff must demonstrate that defendant(s) violated a constitutional right under current law.   *Id.*   "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of."   *Id.*   (quoted source and internal quotation marks omitted).   The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."   *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

In the peculiar context of a motion for summary judgment, "once [the court has] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party to the extent supportable by the record, the reasonableness of [an officer's] actions . . . is a pure question of law."   *Scott v. Harris*, 550 U.S. 372, 397, 127 S.Ct. 1769, 1776 n.8 (2007). Consequently, the Fifth Circuit has recognized that,

> when facts are undisputed and no rational factfinder could conclude that the officer acted unreasonably, we can hold that an officer acted reasonably as a matter of law.   But when facts are disputed and significant factual gaps remain that require the court to draw several plaintiff-favorable inferences, our analysis is more tentative.   In these cases, we must consider what a factfinder could reasonably conclude in filling these gaps and then assume the conclusion most favorable to the plaintiff.

*Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 411–12 (5th Cir.2009) (internal citation omitted).

In other words, there is no constitutional violation if – even after crediting the version of facts most favorable to plaintiff – the officer's conduct was objectively reasonable.   *Id.*

As a pretrial detainee, plaintiff's constitutional rights flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.   *Hare v. City of Corinth*, 74

F.3d 633, 639 (5th Cir.1996).   Pretrial detainees are presumed innocent and not subject to punishment.   *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861 (1979).   "Constitutional challenges by pretrial detainees may be brought under two alternative theories:   as an attack on a 'condition of confinement' or as an 'episodic act or omission.'"   *Shepherd v. Dallas Cty.*, 591 F.3d 445, 452 (5th Cir.2009) (citing *Hare, supra*).   If the plaintiff's claim is an attack on conditions of confinement, then he is relieved from demonstrating a municipal entity's or individual jail official's actual intent to punish because intent may be inferred from the decision to expose a detainee to an unconstitutional condition.   *Id*.   "A condition is usually the manifestation of an explicit policy or restriction:   the number of bunks per cell, mail privileges, disciplinary segregation, etc."   *Shepherd, supra* (citing *Scott v. Moore,* 114 F.3d 51, 53 n. 2 (5th Cir.1997) (en banc)).

However, when a pretrial detainee brings a claim which is directed toward a particular incident, it is properly analyzed as an episodic act case, and a deliberate indifference standard is applied.   *Hare, supra.*   This standard is substantially equivalent to the Eighth Amendment protections available to a convicted prisoner.   *Id.*[4]   In these cases, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."   *Shepherd, supra.*

---

[4] "Claims based upon a jail official's 'episodic acts or omissions' are reviewed under the standard of subjective deliberate indifference enunciated in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L. Ed.2d 811 (1994)."   *Haddix v. Kerss*, 203 Fed. Appx. 551, 553 (5th Cir.2006).

## Analysis

The court observes that plaintiff's factual allegations potentially support several causes of action arising from two trip/slip and fall incidents, thwarted or delayed medical care, and inadequate facilities or accommodations for the mobility impaired.   The court will discuss plaintiff's potential federal and state law remedies against defendants, within the context of each cause of action.

## I.    Slip/Trip and Fall

Carter testified that the shower that he used at the Winn Parish Jail had three to four inch high milk crates on the floor.   (Carter Depo., pg. 14 [doc. # 65-1]).[5]   The crates were installed in 2008 by an inmate named Tony Autry.   *Id.*   Carter assumed that the crates were placed there because of the slow drain that caused water to collect on the floor.   *Id.*, pgs. 32, 35.

On August 20, 2017,[6] Carter slipped and fell in the shower when his flip flop caught on a hole in the milk crate, as he tried to dress himself.   *Id.*, pgs. 24, 27.   When he reached down to free his foot from the hole, his other foot slipped because the crate was not slip-resistant.   *Id.*, pgs. 24-25.   Carter landed on his back, injuring himself.   *Id.*, pg. 31.

Carter's second slip and fall occurred at the JPCC as he was trying to get dressed in the shower.   (Carter Depo., pgs. 115-116).   By that time, his leg no longer functioned; thus, he had a walker, and had been moved to "medical infirm."   *Id.*   He also had been provided a plastic chair in which to sit while he showered.   *Id.*   As Carter tried to push up from the chair, the chair went one way, while the walker went the other.   *Id.*   Carter attributed the second slip and fall to

---

[5] For purposes of the instant motions, the court is obliged to credit plaintiff's version of events.

[6] Carter had been incarcerated at the Winn Parish Jail since July 13, 2017.   *Id.*, pg. 13.

his injured condition from the first fall.  *Id*.  In addition, despite orders by the JPCC nurse for Carter to use the handicapped shower in the booking department, the deputies instead gave Carter a plastic chair and told him to use that.  *Id*., pgs. 119-120.  *Id*.

Slip (or trip) and fall claims typically arise through the negligence of the proprietor or custodian of the premises.  Therefore, "slip and fall" negligence claims ordinarily are not cognizable in a federal civil rights action.  Indeed, "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  *Baker v. McCollan,* 443 U.S. 137, 146 (1979).  It is manifest that "state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right."  *Price v. Roark,* 256 F.3d 364, 370 (5th Cir. 2001) (quoted source omitted).

Plaintiff's allegations regarding the water on the floor in the shower area and the associated placement of milk crates raise nothing more than a negligence claim.  The deputies' instruction for Carter to use a plastic chair instead of the handicapped shower likewise is a matter of negligence.  *See Marsh v. Jones,* 53 F.3d 707, 712 (5th Cir. 1995) (inmate's allegation that leaking air conditioning unit made floor wet, resulting in prisoner slipping and falling, is a garden-variety negligence claim, not deliberate indifference); *see also LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment."); *Benton v. Grant,* 31 Fed. Appx. 160 (5th Cir. 2001) (no remedy under Section 1983 for injuries sustained in jail slip and fall or for claim that defendants knew of leak in ceiling and failed to repair it); *McLaughlin v. Farries,* 122 Fed. Appx. 692 (5th Cir. 2004) (inmate complained that defendants knew that a leaky air conditioner caused water to accumulate on the floor of his cell, which inmate slipped and fell in, causing injury.  Inmate's

12

claim was one of negligence, which was not actionable under Section 1983.).   Both the United States Supreme Court and the Fifth Circuit Court of Appeals have ruled that "slip and fall" negligence claims are not cognizable under § 1983.   *See Daniels v. Williams,* 474 U.S. 327 (1986); *Noble v. Grimes*, 350 Fed. Appx. 892, 893 (5th Cir. 2009).

Further, plaintiff can demonstrate a due process violation only if he can show that the defendants acted with deliberate indifference to a substantial risk of serious harm that resulted in injury.   As shown above, deliberate indifference requires the subjective intent to cause harm. *See Hare, supra.*   Here, plaintiff has not shown that any named defendant "either (a) had sufficient information to infer that the conditions in the shower area presented a substantial risk of harm to prisoners' health and safety or (b) actually drew an inference that inmates faced a risk of harm from the conditions in the shower area."   *Noble, supra*; *see also Atkins v. Sheriff's Jail Avoyelles Par.*, 278 Fed. Appx. 438, 439 (5th Cir. 2008).   Accordingly, plaintiff does not enjoy a feasible § 1983 claim against defendants for the slip/trip and fall incidents that he suffered.

However, because plaintiff has at least one viable federal claim against one or more defendants, *see* discussion, *infra*, the court may exercise supplemental jurisdiction over plaintiff's related state law claims, including his tort claim.   28 U.S.C. § 1367(a).

Under Louisiana law, the customary sources for delictual liability are found in Civil Code Articles 2315 and 2317.   Under either article, plaintiff's burden of proof is now the same.[7]   To

---

[7] *See Dupree v. City of New Orleans*, 765 So. 2d 1002, 1007 n.5 (La. 2000).   Civil Code Article 2317.1, enacted in 1996, "abolished the concept of strict liability" that existed in Louisiana under the pre-1996 version of Article 2317.   *Broussard v. Voorhies*, 970 So. 2d 1038, 1042 (La. App. 1st Cir. 2007), *writ denied*, 970 So.2d 535 (La. 2007).   Before the 1996 amendments, the "sole distinction between the burden of proof necessary to recover under a negligent action . . . versus a strict liability action . . . was . . . proving the defendant's scienter."   *Lasyone v. Kan. City S. R.R.*, 786 So. 2d 682, 689 n.9 (La. 2001); *Dupree, supra.*   Article 2317.1 "eliminated that

13

determine whether a plaintiff should recover on a negligence claim, Louisiana courts employ a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, plaintiff must establish five elements:

> (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).

*Id.*

In its duty-risk analysis, the court should identify "(1) the duty imposed upon the defendant by statute or rule of law and (2) the conduct by defendant that allegedly constituted a breach of that duty." *Id.* Stated another way, negligence by a thing's owner is established with proof that "something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing." *Teel v. State, Dept. of Transp. and Development*, 681 So.2d 340, 343 (La. 1996) (quoted source and emphasis omitted). The court must decide which risks are unreasonable in accordance with the facts and circumstances of the case. *Pitre v. Louisiana Tech University*, 673 So.2d 585, 590 (La. 1996) (citation omitted).[8]

---

distinction." *Lasyone*, 786 So. 2d at 689 n.9; *Dupree*, 765 So. 2d at 1007 n.5.

[8] Whether a given risk is unreasonable "requires a balance of the intended benefit of the thing with its potential for harm and the cost of prevention." *Id.* The determination of whether a particular risk of harm is reasonable is tied to the facts of the case, and is best left to the trier of fact after a trial on the merits. *Sevin v. Parish Of Plaquemines*, 901 So.2d 619, 622 (La. App. 4th Cir. 2005), *writ denied*, 922 So.2d 550 (La. 2006) (citing *Celestine v. Union Oil Co. of*

By law, the sheriff is charged with operating the parish jail and ensuring that the inmates receive proper care. *Oladipupo v. Austin*, 104 F. Supp. 2d 626, 641 (W.D. La. 2000) (citing La. R.S. § 15:704); *Langley v. City of Monroe*, 582 So.2d 367, 368 (La. App. 2d Cir. 1991) (citations omitted). However, the *parish* is responsible for financing and physically maintaining the jail. *Salvagio v. Doe,* No. 13-5182, 2013 WL 6623921 (E.D. La. Dec. 16, 2013); *see also O'QUINN, supra*; *Fairley v. Stalder*, 294 Fed. Appx. 805, 812 (5th Cir.2008) ("day-to-day operation of the parish prison is the responsibility of the local sheriff, and the financing and maintenance are the responsibility of the local governing authority").

In support of its motion for summary judgment, the Winn Parish Police Jury adduced uncontroverted evidence that it never received a repair request relating to the shower floor for Jail Cell No. 3 at any time prior to, or immediately after Carter's fall on August 20, 2017. (Affidavit of Karen Tyler [doc. # 49-3]). The Winn Parish Police Jury also did not place the milk crates on the shower floor. *Id.* Moreover, the Winn Parish Police Jury does not retain custody of the Jail itself; rather, the Winn Parish Sheriff possesses and operates the Jail facility. (Affidavit of Allen McCartney [doc. # 49-2]).

In other words, the Winn Parish Police Jury has established that it neither created the condition, nor had custody of the area that caused plaintiff's accident. Furthermore, it did not have knowledge of the need to repair the poorly draining shower floor prior to the fall. Accordingly, the Winn Parish Police Jury did not breach any duty that it owed to plaintiff.

The same, however, cannot be said for the Winn Parish Sheriff, i.e., Cranford Jordan, in

---

*California*, 652 So.2d 1299, 1304 (La. 1995)).

his official capacity.   There is evidence that the Sheriff operated and had custody of the jail. Moreover, the milk crates have been on the shower floor since 2008, and therefore, the Sheriff knew or should have known about the condition of the shower that necessitated the use of milk crates.[9]

As for plaintiff's slip and fall accident at the JPCC, plaintiff alleged that a guard countermanded instructions by the medical staff that he be allowed to use the handicapped shower in the booking room.   Clearly, the fact that medical personnel deemed access to the handicapped shower necessary to safely accommodate plaintiff's condition constitutes evidence that Carter required use of same.   Instead, a guard instructed Carter to use a plastic chair. Given Carter's limited mobility, the JPCC arguably breached its duty to provide plaintiff with a reasonably safe method to shower.   Of course, the sheriff, in his official capacity, is responsible for operating the parish jail.   *See* discussion, *supra*.   Moreover, under Louisiana law, the actions of the employee (guard) are imputed to the employer (sheriff), via the theory of *respondeat superior*.   *See* La. Civ. Code Art. 2320.

---

[9] In its motion for summary judgment, the Winn Parish Police Jury argued in the alternative that there was no liability because the hole in the milk crate in which plaintiff caught his foot was "open and obvious."   However, the "open and obvious inquiry focuses on the global knowledge of everyone who encounters the defective thing or dangerous condition, thus distinguishing those risks that are open and obvious to all from risk to a particular plaintiff."   *Minix v. Pilot Travel Centers, LLC*, ___So. 3d ___, No. 2018-1197 (La. App. 1st Cir. May 31, 2019).   Here, it is not apparent from the photographs of the shower that the hole in the milk crate was open and obvious to everyone.   [doc. 49-3, pg. 18]; *see Minix, supra* (genuine issues of material fact precluded summary judgment where pothole might not have been apparent depending on the time of day and the existence of shadows).   Moreover, plaintiff fell when his other foot slipped on the milk crate as he tried to free the foot that was caught in the hole.   It is not open and obvious to everyone that milk crates are slippery when wet.

## II.    Delayed/Denial of Medical Care

A pretrial detainee's constitutional right to medical care (as enforced against a state actor) arises from the due process guarantee of the Fourteenth Amendment.    *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000).    When a pretrial detainee initiates a claim for the denial of medical care which is directed toward a particular incident, it is properly analyzed as an episodic act case, and a deliberate indifference standard is applied.    *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996)); *Nerren v. Livingston Police Dept.,* 86 F. 3d 469 (5th Cir. 1996).    This is the same standard applied to claims brought by convicted prisoners under the Eighth Amendment.    "[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001).    To establish liability, a detainee must "show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted."    *Wagner*, *supra*; *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a prisoner means that: 1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001).    "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752,

17

756 (5th Cir. 2001).  Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459.  "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).  "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir.1993) (emphasis added).

"Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).  Furthermore, continuous medical care ordinarily precludes a finding of deliberate indifference on the part of prison officials.  *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995); *Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992).

Here, plaintiff raised several issues regarding the timing and extent of the medical care that he received both at the Winn Parish Jail and at the JPCC.   He first complains that following his slip and fall accident on August 20, Sheriff Jordan left him on the floor for two hours before the ambulance arrived.  *See* Carter Depo., pg. 56.[10]  Carter testified that Deputy Williams told him that before calling for an ambulance, Sheriff Jordan had to review the video footage to

---

[10] The Winn Parish Jail's Incident/Unusual Occurrence Report Form indicates that Carter slipped and fell at 5:50 p.m.  (WPJ-4 [doc.# 41]).   Ambulance records reflect that the ambulance was dispatched at 18:58 and that it arrived on scene at 19:20.  (PJ-00004 [doc. # 36]).  Sheriff Jordan attributed the delay to the fact that the local ambulance service had no available units, and that an ambulance had to be dispatched from Jackson Parish, instead.  (Decl. of Cranford Jordan [doc. # 59-3]).

ensure that the incident warranted an ambulance.  *Id.*, pgs. 49-50.

In response to defendant's motion, however, plaintiff did not adduce any evidence to show that Sheriff Jordan drew an inference that a delay to review video footage posed a substantial risk of harm to Carter, and that by the delay, he intended to harm Carter.   Moreover, plaintiff has not established that the delay resulted in substantial harm to him.   According to the emergency room medical records from that evening, Carter was in no more than "moderate" pain.  (WPMC-6, [doc. # 65-4]).   Furthermore, x-rays were negative, and he was released within two and one-half hours of his arrival with a prescription for an anti-inflammatory and a muscle relaxer.   (WPMC-10-17 [doc. # 65-4]).

In short, plaintiff has not adduced evidence to show that Sheriff Jordan was deliberately indifferent to his medical needs, or that the alleged two hour delay in reaching the emergency room resulted in substantial harm.   *See Harvey v. Jones*, No. 15-2279, 2015 WL 9687841, at *2 (W.D. La. Nov. 16, 2015), *R&R adopted,* 2016 WL 112713 (W.D. La. Jan. 8, 2016) (two hour delay in transportation to medical facility did not cause substantial harm).

Plaintiff next contends that Sheriff Jordan failed to take him to a follow-up appointment with a physician 72 hours after his August 20, accident, as instructed by the emergency room physician.   (Carter Depo., pgs. 71-75; WPMC-11 [doc. # 65-4]).   Carter testified that Deputy Williams advised him that the nurse at the facility had been told not see him.   *Id.*   Williams explained that, in his opinion, Sheriff Jordan was not going to provide Carter with any medical treatment.   *Id.*[11]

---

[11] Jordan objected to the admissibility of statements made to plaintiff by third parties.   *See* Def. Reply Brief [doc. # 68].   However, as an employee of Sheriff Jordan, the statement made by Williams arguably is not hearsay.   *See* Fed.R.Evid. 801(d)(2)(D).

19

Even so, Carter does not know why Sheriff Jordan purportedly told the facility nurse not to see him.    Moreover, Carter admitted that Jordan never told him that he could not receive medical treatment.    (Carter Depo., pg. 135).    Although Carter asked Jordan to speak with him about his medical condition, Jordan failed to engage him, and therefore, Carter did not have a chance to speak with him.    *Id.*

The court further emphasizes that the August 20th emergency room discharge instructions advised Carter to schedule an appointment with his "primary doctor."    (WPMC-12 [doc. # 65-4]).    However, given the relatively benign x-rays and examination findings from the emergency room visit, plaintiff has not adduced evidence to show that Jordan was aware of facts from which an inference of substantial risk of serious harm could be drawn, that he actually drew that inference, and that he subjectively intended to harm plaintiff by purportedly not authorizing a primary care visit.

Indeed, Carter's subsequent medical visits do not support a finding that any delayed medical care caused him substantial harm.    For instance, after his second fall, Carter was admitted to University Health-Shreveport on October 30, 2017, for an overnight stay.    *See* M00025-46 [doc. # 65-5].    At that time, Carter reported to the nurse that he had numbness in his hands, left and right leg numbness, and that his pain was an 8/10.    *Id.*    However, he told the physician that he had head pain, which was only a two on a ten point scale.    *Id.*    An MRI of the cervical spine showed multi-level disc disease with mild stenosis of the cervical spine, but no cord edema/contusion or fracture.    *Id.*    Similarly, an MRI of the lumbar spine showed disc desiccation at L4-L5, subarticular disc bulge at L4-L5, with indentation of L4 root, but no significant stenosis or bone marrow edema.    *Id.*

During the stay, Carter's pain resolved with Tylenol.  *Id.*  No emergent intervention was required per neurosurgery.  *Id.*  Neurology recommended physical/occupational therapy with no further neurological workup.  *Id.*  Carter was referred to physical therapy for left-sided weakness and multi-level disc disease.  *Id.*  He was prescribed ibuprofen for pain control.  *Id.*

Carter again was hospitalized at University-Health Shreveport for two days from December 28-30, 2017, for a myelopathy evaluation.  (M00049-100 [doc. # 65-5]).  Repeat MRI of the entire neuro-axis did not reveal any definitive cause for Carter's symptoms.  *Id.*  As a result, he was not deemed a surgical candidate.  *Id.*  He was transferred to neurology service to rule-out other non-compressive causes of myelopathy.  *Id.*  The physician noted that Carter endorsed unexplained left facial numbness, but the brain MRI was negative for any abnormalities to explain facial involvement.  *Id.*  The physician added that Carter's symptoms might be psychosomatic or there might be a component of secondary gain, given his incarceration.  *Id.*  A neurosurgeon remarked that Carter's MRIs were grossly unremarkable, and that his clinical examination findings were grossly out of proportion to the imaging.  *Id.*, at M00078.  Carter was discharged with no further needs from case management.  *Id.*

Carter returned to University Health-Shreveport on May 17, 2018.  (M00101-116 [doc. # 65-5]).  Upon examination, Carter had no muscle wasting on left lower extremity for someone who allegedly had not been moving for six months.  *Id.*  The physician noted the possibility of secondary gain, but that neuropathy had to be ruled out with electromyography ("EMG") and nerve conduction study.  *Id.*  The physician suggested physical therapy.  *Id.*

Although Carter was scheduled to undergo the EMG and nerve conduction study on June

21

14, 2018,[12] he declined to go because he did not know the purpose of the hospital visit, and instead thought he just was going to see the same doctor that he saw the last time who had offered him nothing.   *See* Carter Depo., pgs. 100-102.

In sum, despite an extensive neurology workup, the physicians who examined Carter failed to find a definitive cause for his symptoms.   Moreover, with the notable exception of physical therapy, there is no indication that the physicians recommended any other treatment that Carter failed to receive.[13]   Carter also conceded in his deposition that he had "no idea" whether Sheriff Jordan, Sheriff Brown, and LaSalle Corrections had anything to do with the physicians' findings and impressions.   (Carter Depo., pgs. 99-100).   He also admitted that his belief that his condition would be improved if he had received different or better medical care was premised solely on his own opinion.   *Id.*, pg. 131.

As to the physical therapy referral, plaintiff did not adduce any evidence to show that Sheriffs Jordan or Brown were personally aware that examining physicians had recommended physical therapy.   Carter testified that he did not know what Sheriff Brown knew, but assumed that because he operated the prison he knew what went on under his roof.   (Carter Depo., pgs. 92-94).   Furthermore, although Carter stated that Sheriff Jordan had to approve all of his treatment, this impression was based on hearsay from nurses and guards at the JPCC.   *See* Carter Depo., pgs. 82-90.   Hearsay is not competent summary judgment evidence.   *Okoye v.*

---

[12] JPCC M71 [doc. # 34-1].

[13] Carter was scheduled to undergo the EMG/nerve conduction study, but elected not to do so because he mistakenly believed that he simply was going to be examined by the same physician he had seen before.

*Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 510 n.5 (5th Cir.2001).[14]   In addition, plaintiff acknowledged that he had "no idea" whether Sheriff Jordan had any ability to influence whether a state hospital rendered him care and treatment.   (Carter Depo., pgs. 86-87).[15]

    The court emphasizes that a defendant's "[p]ersonal involvement is an essential element of a civil rights cause of action."  *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (citation omitted).   Plaintiff did not adduce evidence to show that any named supervisory official, e.g., Sheriffs Jordan or Brown, were personally involved in delaying or denying his medical care or that they played a role in treating him or deciding a course of treatment for him. Consequently, he has not established that any supervisor was deliberately indifferent to his serious medical needs.  *See Barrett v. Mississippi Dept. of Corrections*, 427 Fed. Appx. 349 (5th Cir. 2011).   Further, § 1983 does not support a cause of action against supervisors for the wrongs of their subordinates.  *Thompson, supra*; *see also* discussion, *infra*.   Indeed, supervisory officials are not liable under § 1983 for the actions of subordinates under any theory of vicarious liability.  *Turner v. Lieutenant Driver*, 848 F.3d 678, 695 (5th Cir.2017) (citation omitted). Rather, to impose liability against Jordan or Brown under § 1983, plaintiff must establish

---

[14] There is no evidence that nurses and guards at the JPCC are employees of the Winn Parish Sheriff.   Therefore, their statements are not subject to the exception under Rule 801(d)(2)(D). Moreover, although the Fifth Circuit recognizes that at the summary judgment stage, materials only need be capable of being presented in an admissible form, *LSR Consulting LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016), plaintiff did not identify any admissible form for these statements to be used at trial.   *See Coleman v. Halcon Res. Corp.*, No. 15-2086, 2018 WL 1415670, at *5 (W.D. La. Mar. 21, 2018).   Accordingly, the court will not consider the statements.

[15] To the extent that plaintiff contends that he did not consistently receive all of his ibuprofen medication while at the JPCC, there is no evidence that Sheriffs Jordan or Brown were personally involved in that deprivation.   In addition, Carter did not sue the nurses or guards who were directly involved in the administration of medication.

defendant's (1) "personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (citation omitted). Again, plaintiff did not submit competent summary judgment evidence to show that Jordan or Brown were personally involved in any cognizable constitutional violation.

Insofar as plaintiff contends that Sheriffs Jordan and Brown are liable for their failure to supervise and/or train subordinates, the court observes that, in the absence of the supervisor's personal participation in the events at issue, plaintiff must demonstrate that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Mesa, supra*. Deliberate indifference entails a "conscious choice to endanger constitutional rights." *Id.* (citation and internal quotation marks omitted). Deliberate indifference normally requires more than a single instance of lack of training or supervision. *Id.*

Here, plaintiff did not provide any probative evidence to show that Jordan and Brown failed to supervise or train their officers. *See Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir.2006) (plaintiff failed to provide any evidence to support failure to supervise claim). Moreover, he has not established a *pattern* of similar violations. *Thompson v. Upshur Cty., TX*, 245 F.3d 447, 459 (5th Cir.2001).

In the end, the fact that plaintiff does not believe that his medical treatment was as swift or comprehensive as it could have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not entitled to the "best medical care money can buy." *See Mayweather, supra*;

24

*Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981); *Barrett v. Mississippi Dept. of Corrections*, 427 Fed. Appx. 349 (5th Cir. 2011) (inmate's argument that medical staff did not use the most efficacious method of treatment, e.g., performing surgery earlier, does not establish a claim of deliberate indifference) (citation omitted); *Haddix, supra* (occasional denial of pain medication for preexisting back pain does not show substantial risk of serious harm); *Stockwell v. Kanan*, 442 Fed. Appx. 911, 914 (5th Cir.2011) (continuing back pain does not constitute a constitutional violation when the deficiencies in care are minimal).[16]

Plaintiff also arguably sued Jordan and Brown in their official capacities, in addition to the Winn Parish Police Jury.[17]   Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent."   *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (citation omitted).   A local government entity or municipality is not subject to liability under § 1983 by virtue of the doctrine of respondeat superior.   *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).   Thus, to impose § 1983 liability against a government entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity.   *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)).   Specifically, a plaintiff must identify (a) a policymaker, (b) an official policy or custom or widespread

---

[16] Having determined that plaintiff failed to adduce sufficient evidence to support a claim for inadequate medical care against the named defendants in their individual capacities, the court need not determine whether any such right was clearly established in 2017.   Case law, however, confirms that it was.   *See Easter v. Powell*, 467 F.3d 459, 465 (5th Cir.2006).

[17] Although LaSalle Corrections would be treated as a local government entity for purposes of § 1983, and subject to the same analysis as the other government entities, the court disposes of plaintiff's claims against LaSalle Corrections on a different ground.   *See* discussion, *infra*.

practice, and (c) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694.[18]  "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

In response to defendants' motions, plaintiff did not satisfy each of the elements of a *Monell* claim against the sheriffs, in their official capacities, or the Winn Parish Police Jury.[19] Accordingly, said defendants are not subject to liability under *Monell.*

## III.    Conditions of Confinement

As recited earlier, Carter consistently has alleged that he faced various deprivations because the JPCC was unable to accommodate his mobility impairment.   For example, his cell was not equipped for the mobility-impaired, and he intermittently was required to crawl to use the toilet, was unable to shower for days at a time, and had restricted telephone access.   When

---

[18] For purposes of *Monell* liability, "[t]he final policymaker is the official or body upon whom state or local law has conferred the power to adopt rules governing the conduct of the entity's employees; merely granting an employee discretionary authority does not make the employee a final policymaker."  *Lee v. Morial*, No. 99-2952, 2000 WL 726882, at *2 (E.D. La. June 2, 2000).

[19] The court emphasizes that**Error! Main Document Only.**, "a parish sheriff occupies a constitutional office which exists and functions independently of the governing body of the parish."  *Broussard v. Boudoin*, No. 03-3040, 2004 WL 223984, at *1 (E.D. La. Jan. 29, 2004) (citing La. Const. art. 5, § 27 and La. Const. art. 6, §§ 5(G) and 7(B)).   Therefore, a parish governing body cannot be liable vicariously or pursuant to *Monell* for the acts of the sheriff or his (or her) deputies.  *Foster v. Hampton*, 352 So.2d 197, 203 (La. 1977) (no vicarious liability against the parish); *Broussard, supra* (no vicarious or *Monell* liability against the parish); *Kraft v. Lee*, No. 06-2846, 2006 WL 3395592, at *3 (E.D. La. Nov. 22, 2006) (no vicarious or *Monell* liability against the parish); *Quatrevingt v. Thibodeaux*, No. 10-4047, 2011 WL 2182104, at *2 (E.D. La. May 2, 2011), *R&R adopted*, 2011 WL 2182069 (E.D. La. June 2, 2011) (plaintiff's allegation that parish was the employer of the sheriff and his deputies was incorrect under Louisiana law).

he was in "general population," he was unable to use the ice chest, microwave, and telephone. He further alleged that the facility did not have a proper transportation vehicle for the mobility impaired, and consequently, officials had to "throw" him in and out of the vehicle.   In his opposition to Sheriff Brown and LaSalle Corrections' motion for summary judgment, Carter further complained that because of his wheelchair, he was not able to become a trustee or to be screened for work release.   (Pl. Opp. Memo., pg. 10 [doc. # 69]).

The court finds that these allegations suffice to state a plausible claim for relief under the Americans with Disabilities Act ("ADA").   *See e.g.*, *Albright v. Sheriffs Dep't Rapides Par.*, No. 12-2117, 2014 WL 4702579 (W.D. La. Sept. 22, 2014); *Cleveland v. Gautreaux*, No. 15-744, 2018 WL 3966269, at \*8–9 (M.D. La. Aug. 17, 2018); *Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574–75 (5th Cir.2002).[20]   Plaintiff's ADA claim is properly directed against Sheriff Brown, in his official capacity, as the operator of the JPCC.[21]   Defendants' motions, however, did not address this claim, and the court is unable to conclude that Sheriff Brown is entitled to judgment as a matter of law.   Nonetheless, the court recognizes that there is no individual liability under the ADA, nor is there a parallel § 1983 claim for ADA violations.   *See Albright, supra.*

---

[20] Plaintiff did not invoke the ADA in his complaint, as amended.   However, he alleged more than sufficient facts to support such a claim.   Moreover, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.   Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument."   *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011).

[21] Although plaintiff alleged that Sheriff Jordan was responsible for his placement at the JPCC, the JPCC was plaintiff's immediate custodian, and, apparently, agreed to house him there. Moreover, plaintiff's mobility did not decrease until October 2017 -- after his arrival at the JPCC.   (Carter Depo., pg. 113).

27

In his response(s) to defendants' motions, plaintiff also identified Article I, §§ 12 and 20 of the Louisiana Constitution as potential avenues for recovery.   However, § 20, on its face, addresses only "*law[s]*" that subject persons to cruel and unusual punishment.   *See* Louisiana Constitution, Art. I, § 20.[22]   The Fifth Circuit has held that there is no private cause of action under an analogous section of the Louisiana Constitution that prescribed limitations on other types of "law[s]."   *Washington v. Louisiana*, 628 Fed. Appx. 914, 917 (5th Cir.2015) (citation omitted).

In contrast, § 12 is not limited to "laws," and provides that "[i]n access to public areas, accommodations, and facilities, every person shall be free from . . . arbitrary, capricious, or unreasonable discrimination based on . . . physical condition."   La. Const. Art. I, § 20.   Sheriff Brown, in his official capacity, did not argue or establish that he is entitled to summary judgment as to this claim.

## IV.   New Allegations

In his opposition to defendants' motions for summary judgment, plaintiff endeavored to set forth additional facts to support new causes of action under the First Amendment for retaliation, denial of access to the courts because of inability to use the prison library, and for intentional infliction of emotional distress.

The Fifth Circuit has recognized that a court should construe a pro se response to a dispositive motion as a motion to amend complaint under Federal Rule of Civil Procedure 15(a). *Riley v. Sch. Bd. Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010) (response to summary judgment motion) (citations omitted).   Moreover, in deciding whether to grant a party leave to

---

[22] Although not mentioned in his prior pleadings, this theory of recovery is supported by plaintiff's earlier factual allegations.

amend, the court considers the following factors:   1) undue delay, 2) bad faith or dilatory

motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to

the opposing party, and 5) futility of the amendment.   *Rosenzweig v. Azurix Corp.,* 332 F.3d

854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).   Absent any of these

factors, leave should be granted.   *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)

(citation omitted).[23]

The court finds that amendment should not be permitted to assert these additional facts

and claims.   To state a claim of retaliation, a prisoner must allege facts which establish that (1)

he exercised a specific constitutional right, (2) the defendant had the intent to retaliate against

him for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation.

*Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir.1995).   Although meaningful access to the courts

is a protected right, plaintiff has failed to demonstrate that the alleged loss of library time

impeded his access to the courts or chilled his litigation efforts.   *Olstad v. Gonzales*, 311 Fed.

Appx. 714, 715 (5th Cir. Feb. 20, 2009) (unpubl.) (citation omitted).   In fact, his allegations are

belied by his continued ability to successfully prosecute various motions and to file well-

reasoned responses to defendants' motions for summary judgment.   *See Carlson v. Quada*, 295

Fed. Appx. 623, 624 (5th Cir. 2008) (conclusory assertions that defendants denied plaintiff access

to law library in retaliation for his litigious activities, does not establish a constitutional

violation).

Further, to prevail on a claim that he was denied his constitutional right of access to the

courts, plaintiff must "demonstrate[ ] that his position as a litigant was prejudiced by his denial

---

[23] The court denied a similar version of these claims as futile for failure to exhaust administrative remedies.   *See* Feb. 15, 2019, Mem. Order [doc. # 77].

of access to the court." *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir.1996) (*per curiam*) (citing *Walker v. Navarro County Jail*, 4 F.3d 410, 413 (5th Cir.1993)). This requirement that a claimant show "actual injury" is "not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354; 116 S.Ct. 2174, 2181 (1996). Rather, the right to access the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." Because of the actual injury requirement, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Mendoza v. Strickland*, 414 Fed. Appx. 616, 618 (5th Cir.2011) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179 (2002).

Plaintiff has not shown how his ability to prepare and transmit legal documents to this court, or any other court, has been *materially* inhibited. *See Lockamy v. Dunbar*, 399 F. App'x 953, 955 (5th Cir. 2010) (plaintiff provided no concrete evidence to establish that defendants' actions prejudiced the progression of his current cases). Indeed, plaintiff's substantial filings in this case belie any such contention. For the same reason, plaintiff's proposed amendment fails to state a claim for inadequate library time.[24]

---

[24] A claim alleging a denial of access to the law library is analyzed under the general right of access to the courts. *Griffin v. Valdez*, 2008 WL 4491052 (N.D. Tex. Oct. 1, 2008) (citing *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 1496 (1977)). An inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' allegedly unconstitutional conduct. *Lewis v. Casey*, 518 U.S. 343, 351-54, 116 S.Ct. 2174 (1996). To prevail on such a claim, a prisoner must show that his legal position has been prejudiced. *See Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir.1988). He must allege and ultimately demonstrate that he was prevented from raising a meritorious legal issue. *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir.1998). While plaintiff alleged that he was unable to research the law, he has not established actual prejudice.

Insofar as plaintiff intended to assert an intentional infliction of emotional distress ("IIED") claim under the First Amendment, he has not demonstrated that such a claim is cognizable.   Moreover, to the extent that he intended an IIED claim against defendants under state tort law, the Louisiana Supreme Court has explained that to be actionable,

> [t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.   Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.   Not every verbal encounter may be converted into a tort; on the contrary, some safety valve must be left through which irascible tempers may blow off relatively harmless steam . . .

*White v. Monsanto, Co.*, 585 So.2d 1205, 1209 (La. 1991) (citations omitted).

Further, "[c]onduct which is merely tortious or illegal does not rise to the level of being extreme and outrageous for purposes of the tort of intentional infliction of emotional distress."   *Schmidt v. Cal-Dive Int'l, Inc.*, 240 F. Supp.3d 532, 552 (W.D. La.2017) (*citing Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1024-25 (La. 2000)).

Plaintiff has not made the requisite showing here.   Furthermore, there is no indication that any IIED claim would not constitute an element of plaintiff's damages for his negligent slip and fall claims or his ADA and § 12 claims.   Therefore, he does not have a separate IIED claim to recover these overlapping damages.   *Kelly v. W. Cash & Carry Bldg. Materials Store*, 745 So.2d 743, 760 (La. App. 4th Cir. 1999).

In sum, plaintiff's proposed amendment is futile, and is denied on that basis.   *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Par.*, 327 Fed. Appx. 472, 478 (5th Cir.2009) (motion to amend properly denied where proposed amendment is futile).

## V.    LaSalle Corrections

31

The court reiterates that, in Louisiana, the sheriff is charged with operating the parish jail and ensuring that the inmates receive proper care. *Oladipupo, supra*; *Langley, supra.* Accordingly, by law, the JPCC is a parish corrections facility operated by the Jackson Parish Sheriff.

Plaintiff contends that a "Google" search indicated that LaSalle Corrections had some management responsibilities for the JPCC. (Carter Depo., pgs. 94-96). However, in response to defendant's motion for summary judgment, he did not submit any supporting evidence, e.g., a contract, to controvert the legal presumption that Sheriff Brown is responsible for operating the JPCC. In addition, Sheriff Brown did not contest that his office is responsible for operating the parish jail or that the workers at the JPCC are employed by him. Accordingly, plaintiff has not established that he has a viable claim against LaSalle Corrections as to any of his claims.

<u>Conclusion</u>

To sum up, the court finds that plaintiff has a viable ADA claim against Sheriff Brown, in his official capacity. By virtue of the federal ADA claim, the court enjoys supplemental jurisdiction to entertain plaintiff's state law tort claims against Sheriffs Jordan and Brown, in their official capacities, stemming from his slip and fall accidents. Also pending is plaintiff's claim under Article I, § 12 of the Louisiana Constitution against Sheriff Brown, in his official capacity. Nevertheless, the court finds that there is no genuine dispute as to a material fact, and that defendants are entitled to judgment as a matter of law, to the following limited extent:[25]

---

[25] Insofar as the undersigned has expanded upon the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties). In any event, the court possesses the inherent authority to dismiss a party sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995

IT IS RECOMMENDED that the motion for summary judgment [doc. # 49] filed by defendant, the Winn Parish Police Jury, be GRANTED, and that plaintiff's claims against said defendant be DISMISSED, WITH PREJUDICE, in their entirety.

IT IS FURTHER RECOMMENDED that the motion for summary judgment [doc. # 59] filed by defendant, Cranford Jordan, be GRANTED-IN-PART, and that plaintiff's state law claim under Article I, § 12 of the Louisiana Constitution, plus all of his federal law claims against said defendant, in his individual and official capacities, including, but not necessarily limited to, his claims for inadequate/delayed medical care, conditions of confinement (including denial of access to courts), supervisory liability, failure to train, and *Monell* liability be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the motion for summary judgment [doc. # 64] filed by defendants, Andy Brown and LaSalle Corrections, be GRANTED-IN-PART, and that plaintiff's claims against LaSalle Corrections be DISMISSED, WITH PREJUDICE, in their entirety, and that plaintiff's state law claim under Article I, § 12 of the Louisiana Constitution, plus all of his 42 U.S.C. § 1983 claims against Andy Brown, in his individual and official capacities, including, but not necessarily limited to, his claims for inadequate/delayed medical care, conditions of confinement (including denial of access to courts), supervisory liability, failure to train, and *Monell* liability be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the motions for summary judgment [doc. # 59 & 64] otherwise be DENIED, i.e., as to plaintiff's state law tort claims against Sheriffs Jordan

---

WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer).

and Brown, in their official capacities, and as to his ADA claim and his claim under Article I, §

12 of the Louisiana Constitution against Sheriff Brown, in his official capacity.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties

have **fourteen (14) days** from service of this Report and Recommendation to file specific,

written objections with the Clerk of Court.   A party may respond to another party's objections

within **fourteen (14) days** after being served with a copy thereof.   A courtesy copy of any

objection or response or request for extension of time shall be furnished to the District Judge at

the time of filing.   Timely objections will be considered by the District Judge before he makes a

final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED
FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS
REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE
SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,
FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL
FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 19th day of June 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE