UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

LANE CARTER                                                    CASE NO. 3:18-CV-00068, SEC. P.

VERSUS                                                          JUDGE TERRY A. DOUGHTY

JACQUE DERR, ET AL.                                    MAG. JUDGE KAREN L. HAYES

## MEMORANDUM ORDER

Before the undersigned Magistrate Judge, on reference from the District Court, are two

motions filed by plaintiff Lane Carter, each with an accompanying request for fees:   a motion

for spoliation sanctions [doc. # 122]; and a motion to compel discovery responses [doc. # 124].

The motions are opposed.   For reasons assigned below, the motion for spoliation sanctions is

DENIED at this time, and the motion to compel is GRANTED-IN-PART and DENIED-IN-

PART.[1]

## I.        Motion for Spoliation Sanctions

Plaintiff Lane Carter contends that defendant, Jackson Parish Sheriff Andy Brown, failed

to preserve video footage from the Jackson Parish Correctional Center ("JPCC") that would have

shown Carter's disabilities and Brown's failure to accommodate his disabilities.   Plaintiff argues

that Brown's discovery misconduct is actionable pursuant to the court's inherent authority,

and/or paragraphs (b) and (e) of Rule 37 of the Federal Rules of Civil Procedure.   Plaintiff seeks

various forms of relief and fees as a result.   *See e.g.*, Pl. Motion, pgs. 1-2.

In response to plaintiff's motion, Brown submitted an affidavit from JPCC Warden

Timothy Ducote wherein he averred, *inter alia,* that,

---

[1]   As these motions are not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim
on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling
is issued under the authority thereof, and in accordance with the standing order of this court.
Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

There are no video surveillance recordings from September 5, 2017 through January 2019, other than those that might have been preserved in matters not involving Carter.

It is unknown whether there was ever video surveillance recordings from September 5, 2017 through January 2019 that would have contained any video recordings sufficiently clear to show any of Carter's alleged physical or medical problems or issues.

JPCC retains video surveillance recordings for, approximately, 14 days and then the system automatically overwrites the stored video recordings with new video recordings.

By the time I had reason to know that any surveillance video recordings of Carter might be relevant to a lawsuit, any such video had already been overwritten.

There are approximately 6-7 video surveillance cameras in the dorm at JPCC that might have captured video images of Carter.  The cameras generally record 24 hours a day, 7 days a week, 365 days a year.

I have reviewed Carter's Complaint [Doc. No. 1] and Amended Complaints [Doc. No. 15 and 17], and know, based upon Carter's description of where he fell on October 27, 2017, that there was no camera in position to record the area where the fall was claimed to have occurred.

I have reviewed Carter's Complaint [Doc. No. 1] and Amended Complaints [Doc. No. 17 and 17] and know, based upon Carter's description of his detention in disciplinary lockdown cell, that there was no camera in place to record that cell.

In general there are no cameras in position to record the bathroom or shower areas in a dorm.

There are many areas within JPCC where detainees are allowed that have no video surveillance due to the placement of the cameras, including the nurse's station/office.

(Ducote Affidavit; Def. Response, Exh. 1).

Plaintiff initially argues that Brown's failure to preserve video footage is sanctionable pursuant to the court's inherent authority and Rule 37(b).   However, the 2015 amendment to Rule 37(e) forecloses reliance on inherent authority to impose sanctions for failure to preserve

2

electronically stored information ("ESI").[1]   Fed. R. Civ. P. 37(e) (advisory committee's note to 2015 amendment).   In any event, sanctions under the court's inherent authority are limited to instances of "bad faith or willful abuse of the judicial process."   *Pressey v. Patterson,* 898 F.2d 1018, 1020 (5th Cir.1990); *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 767, 100 S.Ct. 2455, 2465 (1980) (finding of bad faith is required for any sanction under the court's inherent powers). Plaintiff has not established that Brown is guilty of such misconduct here.   *See* discussion, *infra*.

Under Rule 37(b), if a party fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35 or 37(a), then the court may issue further "just" orders. Fed.R.Civ.P. 37(b)(2).   Here, plaintiff noted that the court's June 13, 2018, service order specified that,

> [w]ithin twenty-one (21) days of Defendants' first appearance (filing of an answer or motion), or within thirty (30) days after service of the summons and complaint if Defendant(s) have made no appearance, Defendants or their counsel shall provide to Plaintiff all medical records, warden's unusual occurrence reports, and all other documents pertinent to the issues in this case, that are in their possession. See FED. R. CIV. P. 26(a)(1).

(June 13, 2018, Mem. Order [doc. # 20]).

Plaintiff suggests that "documents" is broad enough to include video surveillance evidence or other electronically stored information ("ESI"). However, "documents" do not per se connote videos or ESI.[2]   In fact, the court is hard-pressed to recall even one other instance where a defendant has produced videos or ESI pursuant to the foregoing order.   While the order also references Rule 26(a)(1), which addresses information to be provided in initial disclosures,

---

[1] Several courts have held that surveillance video constitutes ESI.   *Gipson v. Mgmt. & Training Corp.*, 16-0624, 2018 WL 736265, at *5 n.3 (S.D. Miss. Feb. 6, 2018) (collecting cases).

[2] Plaintiff noted that Sheriff Brown defined "documents" to include "recordings" in a discovery request that he propounded to plaintiff.   Be that as it may, there is no indication that Brown was obliged to attribute the same definition of "documents," in responding to the court's order.

including ESI, Rule 26(a)(1) only requires disclosure of ESI that the *disclosing* party may use to support its claims or defenses.   Fed.R.Civ.P. 26(a)(1)(A)(ii).   Needless to say, there is no indication that Sheriff Brown intends to use surveillance videos that no longer exists. Furthermore, insofar as plaintiff must resort to Rule 26(a) to expand the court's June 2018 order to encompass ESI, the remedy for failure to provide information under Rule 26(a) is directly provided by Rule 37(c), and primarily entails prohibiting the non-disclosing party from using that evidence to support his case.   *See* Fed.R.Civ.P 37(c)(1).   While Rule 37(c) also incorporates remedies available under Rule 37(b), the more severe sanctions under Rule 37(b) require a finding of bad faith or willful misconduct.   *Pressey, supra*.   Considering that the word, "documents," does not naturally include ESI, plaintiff has not demonstrated that defendant acted in bad faith or is guilty of willful misconduct as required to support sanctions under Rule 37(c) and/or (b).

In contrast to the foregoing bases to support the instant motion, it is manifest that Rule 37(e) directly contemplates the present circumstances:

> [i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> > **(A)** presume that the lost information was unfavorable to the party;
> >
> > **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or

**(C)** dismiss the action or enter a default judgment.
Fed.R.Civ.P. 37(e).

Thus, four predicate elements must be established before Rule 37(e) applies:   1) the existence (at least at one time) of electronically stored information ("ESI") that should have been preserved;[3]  2) the ESI has been lost; 3) the ESI was lost because of a party's failure to take reasonable steps to preserve it; and 4) the ESI cannot be restored or replaced.   *Richard v. Inland Dredging Co., LLC*, No. 15-0654, 2016 WL 5477750, at *3–4 (W.D. La. Sept. 29, 2016); *UMG Recordings, Inc. v. Grande Commc'ns Networks, LLC*, No. 17-365, 2019 WL 4738915, at *1 (W.D. Tex. Sept. 27, 2019).   Only once the court determines that the foregoing elements have been established may it then consider imposition of the appropriate responsive measure. *Richard, supra*.

If a party has been prejudiced by the loss of the ESI, the court "*may* order measures no greater than necessary to cure the prejudice . . ."   Fed.R.Civ.P. 37(e)(1).   If, on the other hand, the court finds that the party who lost the ESI "acted with the intent to deprive another party of the information's use in the litigation," then the court *may* choose to impose one of three, more severe, sanctions.   Fed.R.Civ.P. 37(e)(2).

---

[3]  A party's duty to preserve evidence arises when "the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."   *Toth v. Calcasieu Parish*, Civ. Action No. 06-0998, 2009 WL 528245 (W.D. La. Mar. 2, 2009) (Trimble, J.) (citation and internal quotation marks omitted); *Dixon v. Greyhound Lines, Inc.*, Civ Action No. 13-0179, 2014 WL 6087226, at *3 (M.D. La. Nov. 13, 2014).   A person "anticipat[ing] being a party . . . to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary."   *Toth, supra*.   The duty to preserve extends to evidence that a party "knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request."   *Id*.

Intertwined with the issue of whether plaintiff was prejudiced by defendant's alleged failure to preserve ESI, is the threshold matter of whether Brown ever possessed relevant ESI at all.[4]  In response to plaintiff's motion, Brown adduced uncontroverted evidence to show that there were no cameras in position to record the bathroom and shower areas of the dormitory, including the area where plaintiff fell.   Moreover, there were no cameras in position to show Carter's detention in the disciplinary lockdown cell or at the nurses' station.   As the court appreciates it, the challenged conduct that principally spurred plaintiff's suit materialized in the aforementioned areas where there were no cameras.   *See* doc. # 20, pg. 3.

Thus, if anything, the cameras might have shown defendant's alleged failure to accommodate plaintiff's impairment and injuries during the period that he was housed in the dormitory.   It is not known, however, precisely where the cameras were placed, or whether they were situated such that they would have documented the difficulties that plaintiff experienced because of his impairments.   Furthermore, plaintiff complained that these potential ADA transgressions and manifestations of his slip and fall injuries occurred in November and December 2017.   However, the court is not persuaded, at least on the present record, that Brown should have preserved all video footage from that time period going forward on the off-chance that it might include one or more scenes depicting the difficulties that plaintiff faced as a result of the injuries that he suffered following the slip and fall accident(s).[5]

---

[4] Plaintiff alleges that under the Louisiana Public Records Act, the Sheriff is a "public body" and therefore obliged to preserve the videos as "public records."   La. R.S. § 44:1.   Even so, the Public Records Act provides its own remedy for any person whose records request is not promptly answered.   *See* La. R.S. § 44:35.   However, the inadvertent destruction of public records prior to a public records request does not authorize an award of penalties and damages. *Chandler v. Ouachita Par. Sheriff's Office*, 121 So.3d 1216, 1223 (La. App. 2d Cir. 2013).

[5] In his opposition to defendants' motions for summary judgment that plaintiff filed on December 27, 2018, he stated how he was the only inmate in a wheelchair and that he continued to experience difficulties moving around the dormitories in a wheelchair.   *See* doc. # 69.

6

Even if plaintiff were able to establish that Brown failed to preserve relevant videos, the court "may order measures no greater than necessary to cure the prejudice . . ."[6]  At this point, it seems that, at best, the videos *might* have shown the difficulties that a non-ambulatory person would face in the dormitory.   Plaintiff could ameliorate any prejudice from the lost video by reenacting and filming the difficulties that a wheelchair-bound person such as himself would have experienced in the dormitory where he was housed – assuming the conditions remain static.[7]

Finally, it is manifest that plaintiff has not established that defendant *intentionally* deprived him of use of the ESI, as required to support the more severe sanctions authorized under Rule 37(e)(2).   The destruction of evidence pursuant to a routine policy does not suffice to support an adverse inference.   *Washington v. Wal-Mart Louisiana LLC*, No. 16-1403, 2018 WL

---

However, there is no indication that plaintiff filed a motion to compel defendants to produce video footage at that time.

[6] The Rules Advisory Committee's notes elaborate on the meaning of prejudice:

> [a]n evaluation of prejudice from the loss of information necessarily includes an evaluation of the information's importance in the litigation.

> The rule does not place a burden of proving or disproving prejudice on one party or the other. Determining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair. In other situations, however, the content of the lost information may be fairly evident, the information may appear to be unimportant, or the abundance of preserved information may appear sufficient to meet the needs of all parties. Requiring the party seeking curative measures to prove prejudice may be reasonable in such situations. The rule leaves judges with discretion to determine how best to assess prejudice in particular cases.

Fed. R. Civ. P. 37(e)(1) (Advisory Committee Notes).

[7] While defendant apparently contests that plaintiff was actually disabled, the court does not understand defendant to be challenging the fact that plaintiff used a wheelchair while in the dormitory.

7

2292762, at *5 (W.D. La. May 17, 2018); *Vick v. Texas Employment Comm'n*, 514 F.2d 734, 737 (5th Cir.1975).   In fact, the negligent or even grossly negligent destruction of evidence does not open the door to Rule 37(e)(2) sanctions.   *See Richard, supra; Vick, supra.*

In sum, plaintiff has not established that sanctions for spoliation of evidence are available or warranted at this time.   Plaintiff may re-urge his motion at trial, if supported by additional discovery.[8]

## II.      Motion to Compel

On March 12, 2020, plaintiff filed the instant motion to compel discovery responses from defendant, Brown, plus an associated request for fees.   Following a court-mandated attempt at further conciliation,[9] the parties succeeded in whittling down the disputed discovery to the following items:

INTERROGATORY NO. 5: Identify any and all verbal complaints concerning the provision of medical care and/or reasonable accommodations/modifications at JPCC since January 1, 2010, which were not memorialized in a writing.

REQUEST FOR PRODUCTION NO. 4:   Any and all communications concerning the ADA, including but not limited to the provision of reasonable accommodations/modifications for inmates, since January 1, 2010.

REQUEST FOR PRODUCTION NO. 8:   Any and all complaints (whether formal or informal) made   concerning   the   provision   of   medical   care   and/or   reasonable accommodations/modifications at JPCC since January 1, 2010.

REQUEST FOR PRODUCTION 3:   Any and all communications written by or concerning Plaintiff.

---

[8]  Plaintiff alternatively asked the court for an opportunity to amend his complaint after depositions are taken to set forth a claim for spoliation under Louisiana law.   As in any case, plaintiff may seek to amend his complaint in accordance with Rule 15 and subject to the applicable scheduling order deadline or Rule 16(b)(4).

[9]  *See* March 16, 2020, Order [doc. # 127].

In response to defendant's suggestion, plaintiff agreed to limit the look-back period for the first three discovery requests to January 1, 2014.   Also, to assuage any HIPAA concerns, plaintiff remains amenable to a protective order or to the production of any responses with any identifying information redacted.

Nonetheless, defendant maintains various objections to the requested discovery.   For instance, he contends that verbal complaints concerning inadequate medical care from anyone other than Carter are irrelevant.   Defendant further argues that it would prove unduly burdensome to search for and produce all communications concerning the ADA for all inmates over a six-year period.   He also maintains that records of medical complaints by others are irrelevant to plaintiff's claims.

Upon consideration, plaintiff has not demonstrated the relevancy of medical care complaints by other inmates.   The court has dismissed plaintiff's claims for inadequate/delayed medical care.   *See* July 15, 2019, Judgment [doc. # 84].   However, evidence of requests for reasonable accommodation or complaints of failure to accommodate by other *wheelchair-bound* inmates may be relevant to the issue of whether defendant intentionally discriminated against plaintiff under the ADA such that plaintiff is entitled to recover compensatory damages.   *See e.g., Delano-Pyle v. Victoria Cty., Tex.*, 302 F.3d 567, 574–75 (5th Cir.2002) (citation omitted). Furthermore, whether other wheelchair-bound inmates complained about the same allegedly ADA-deficient conditions at the facility is relevant to the objectivity of plaintiff's own experience.   *See e.g., Greer v. Richardson Indep. Sch. Dist.*, 472 Fed. Appx. 287, 297 (5th Cir. 2012) (experiences of other disabled stadium-goers undermined plaintiff's lone claim).

To ameliorate defendant's concerns, the court will limit the scope of the first three discovery requests to complaints/communications regarding the provision of reasonable

9

accommodations/modifications for **wheelchair-bound** inmates at JPCC from January 1, **2015,** until the present.   In one of plaintiff's submissions to the court, he stated that he was not aware of any other wheelchair-bound inmate at JPCC.   If plaintiff is correct, then there likely were not very many other wheelchair-bound inmates at JPCC over the past five years.   As such, defendant should be able to readily poll his employees to identify those individuals. Furthermore, whether by email or written questionnaire, it should not prove unduly burdensome for defendant to ask his employees whether any wheelchair-bound inmates verbally complained about accessibility issues at the facility.

Finally, defendant has not established that it would prove unduly burdensome to produce responsive documents to Request for Production No. 3.   Defendant certainly should be able to search internal emails for discussions of Carter and any requests for accommodation that he may have made.   Similarly, defendant should be able to identify written responses to any request for accommodation made by Carter.   In addition, defendant may search his records for any memoranda that may have discussed plaintiff and the provision of reasonable accommodation for his impairment.

In light of the mixed relief obtained by plaintiff on his motion compel, and after requiring the parties to further confer following the filing of the motion, the court declines to award fees and costs in this instance.

## Conclusion

For the above-assigned reasons,

IT IS ORDERED that plaintiff's motion for spoliation sanctions, and associated request for fees, etc. [doc. # 122] is DENIED, at this time.

10

IT IS FURTHER ORDERED that plaintiff's motion to compel discovery responses from Sheriff Brown [doc. # 124] is GRANTED-IN-PART, as detailed in the body of this decision. All further production and supplementation required hereunder shall be completed within the next thirty (30) days from the date of this order.[10]

IT IS FURTHER ORDERED that plaintiff's motion to compel, including the request for fees, etc. [doc. # 124], otherwise is DENIED.

In Chambers, at Monroe, Louisiana, this 30th day of April 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

[10] To the extent that Covid19 restrictions materially impair defendant's ability to respond to the discovery within the foregoing deadline, then he may seek an extension of time within which to comply.

11